UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CHADWICK MCQUEEN and THE TERRY
MCQUEEN TESTAMENTARY TRUST,

       Plaintiffs,

  vs.

CLOTHING COMPANY S.P.A., BELSTAFF USA
CORP., and BELSTAFF INTERNATIONAL LTD.,

       Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JUDGE SWAIN

**08 CV 3019**

No.:

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

MAR 2 5 2008
U.S.D.C. S.D. N.Y.
CASHIERS

  Plaintiffs Chadwick McQueen and The Terry McQueen Testamentary Trust

(collectively, the "McQueen Heirs" or "Plaintiffs"), by their attorneys Quinn Emanuel Urquhart

Oliver & Hedges, LLP, as and for their Complaint against defendants Clothing Company S.p.A.,

Belstaff USA Corp., and Belstaff International Ltd. (collectively, "Belstaff" or "Defendants"),

allege as follows:

<u>PRELIMINARY STATEMENT</u>

  1.  This action arises from Defendants' willful and brazen unauthorized use of the

name, image, signature, and likeness of legendary actor and icon Steve McQueen, thereby

jeopardizing the goodwill and value that the true owners of Steve McQueen's publicity and

trademark rights—his heirs—have developed and protected through enormous effort since his

untimely death in 1980.  On behalf of Steve McQueen's heirs, Plaintiffs seek damages,

injunctive relief, and other relief for false representation, false designation of origin, trademark

infringement, unfair competition, false advertising, and infringement of the right of publicity

knowingly and willfully committed by Defendants in violation of the laws of the United States

and various states including the States of California and New York.

  - 1 -

2.    Steve McQueen, one of the most idolized and recognizable actors in film history, passed away on November 7, 1980. Pursuant to Steve McQueen's will and trust, his assets, including rights in his name, voice, signature, photograph, likeness (collectively the "McQueen Personality Rights"), and/or related trademarks, including the mark STEVE MCQUEEN (the "McQueen Trademarks") passed to his children Chad McQueen and Terry McQueen. Plaintiffs are the exclusive legal and financial beneficiaries of Steve McQueen's will and trust, and own and control the McQueen Personality Rights and McQueen Trademarks.

3.    After Defendants' failed attempt at negotiating a license with Plaintiffs' exclusive licensing agent to use the rights they now brazenly employ without a license, Defendants—with full knowledge that they did not have authorization from Plaintiffs—began manufacturing, offering for sale and selling, advertising, marketing, and distributing clothing under the label name "**Steve McQueen Celebration**." These products included Steve McQueen's name and image, contained language representing that the clothing was an "Official Steve McQueen Licenced [sic] Product," and otherwise communicated an association with or sponsorship or endorsement by the estate of Steve McQueen.

4.    After receiving a demand by Plaintiffs through their licensing agent to immediately cease and desist from any further infringing and unauthorized conduct, Defendants continued to manufacture, offer for sale and sell, advertise, market and distribute clothing using Steve McQueen's name without authorization, this time under the label name "**SMQ Celebration**," with accompanying advertising language clearly representing that the products were associated with or sponsored or endorsed by the estate of Steve McQueen, just as surely as their infringing "Steve McQueen Celebration" product line of clothing.

5.      These unlawful actions by Defendants amount to a willful and conscious disregard for Plaintiffs' rights, and are knowingly and intentionally designed to capitalize on the goodwill, recognition, and fame associated with Steve McQueen through the McQueen Personality Rights and McQueen Trademarks, causing confusion to the public and injury to Plaintiffs.

## PARTIES

6.      Plaintiff Chadwick McQueen ("Chad McQueen") is a citizen of the State of California.

7.      Plaintiff The Terry McQueen Testamentary Trust (the "Trust"), by its current co-trustees Neile Adams Toffel and Kenneth Gross (who represent the interests of the Trust's sole beneficiary, Terry McQueen's daughter, Molly Flattery), is deemed to be a citizen of the State of California pursuant to 28 U.S.C. § 1332(c)(2). The McQueen Heirs are and have always been at all relevant times the sole and exclusive legal and beneficial owners of the Steve McQueen name, personality, publicity, privacy and trademark rights.

8.      On information and belief, defendant Clothing Company S.p.A. is a corporation organized under the laws of Italy with its principal place of business at via Bonisiolo 15, Zerman di Mogliano Veneto (TV), 31020, Italy. On information and belief, Clothing Company S.p.A. was founded in 1996 for the purpose of reviving and managing the production and sale of Belstaff brand products.

9.      On information and belief, defendant Belstaff USA Corp. is a corporation organized and existing under the laws of Delaware, with its principal place of business at 269 Elizabeth Street, New York, New York 10012.

10.      On information and belief, defendant Belstaff International Ltd. is an Italian business entity wholly owned by Clothing Company S.p.A. in 2004, with its principal place of

business at via Bonisiolo 15, Zerman di Mogliano Veneto (TV), 31020, Italy.  On information and belief, Defendants together design, manufacture, distribute, market, advertise, and/or sell for distribution in the United States and internationally clothing products under the brand name "Belstaff," including jackets, coats, sweaters, T-shirts, pants, and shoes, and maintain a showroom in New York City.

## JURISDICTION AND VENUE

11.     This action arises under the Trademark Act of 1946 (Lanham Act), Title 15, United States Code, and the statutory and common law of the rights of publicity and unfair competition.  In addition, and independently, there is complete diversity of citizenship between the parties, and the amount in controversy of this action exceeds $75,000.00, exclusive of interest and costs.  This Court therefore has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, 1332 and 1338, as well as principles of pendent and supplemental jurisdiction under 28 U.S.C. § 1367.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391.  Clothing Company S.p.A. and Belstaff International Ltd. are treated as aliens who may be sued in any district of the United States, and Belstaff USA Corp. resides in New York, pursuant to New York Civil Practice Law and Rules § 301.

13.     Additionally, and independently, Defendants are subject to personal jurisdiction in the United States as well as the Southern District of New York, pursuant to New York Civil Practice Law and Rules § 302, by virtue of their transacting business and/or contracting to supply goods or services in the State of New York, their commission of tortious conduct as described herein within the State of New York, and their commission of tortious conduct as described herein outside the State of New York, causing injury to Plaintiffs within the State of New York,

with the actual or reasonable expectation that said conduct will have consequences in the State of New York, and Defendants' deriving substantial revenue from interstate commerce.

## FACTS GIVING RISE TO THIS ACTION

### A.    Hollywood Legend Steve McQueen

14.    Plaintiffs are the legal and beneficial owners, representatives, and successors of the personality, publicity, image, privacy and trademark rights of Hollywood actor and icon Steve McQueen. Steve McQueen used the name "Steve McQueen" professionally at least as early as 1952, when he began his career in theater, and it is the only name by which the general public has ever known him.

15.    After starring in the television series *Wanted: Dead or Alive*, Steve McQueen received nationwide notice in *The Magnificent Seven* (1960). His fame and prominence grew after appearing in the hits *The Great Escape* (1963) and *The Cincinnati Kid* (1965), solidifying his reputation as the King of Cool. Further hits followed, including *Nevada Smith* (1966), *The Sand Pebbles* (1966), *The Thomas Crown Affair* (1968), *Bullitt* (1968), *Le Mans* (1971), and *The Getaway* (1972). Appearing in *The Towering Inferno* (1974), Steve McQueen became the highest-paid movie star of his time. Steve McQueen was also famous for his rebellious, anti-hero persona outside of films, and he was renown for racing motorcycles and cars professionally, both in the United States and abroad.

16.    Steve McQueen passed away on November 7, 1980. Public interest in Steve McQueen, however, lives on. Among examples of his continuing and enduring fame: he has twice inspired a line of Ford Bullitt Mustang cars, including the most recent 2008 edition; songwriters such as Sheryl Crow and The Beastie Boys have written musical tributes to him; he was voted on the top 100 Greatest Movie Stars Of All Time by *Entertainment Weekly*; he was the cover story in the September 2006 issue of Motor Trend Classic; the sunglasses he wore in

*The Thomas Crown Affair* sold at auction for $70,000 in 2006; a Ferrari he once owned fetched over $2.3 million (more than four times its market value) at a widely covered 2007 Christie's auction; *Esquire* magazine featured a multi-page fashion tribute to Steve McQueen's renowned style in March 2008; and his film *Bullitt* was selected for the National Film Registry in 2007.

**B.**     **The McQueen Testamentary Trust and the Transfer of Rights**

     17.     Upon Steve McQueen's death, pursuant to Steve McQueen's will, the balance of Steve McQueen's assets and rights initially transferred to the McQueen Children's Testamentary Trust. When Steve McQueen's two children, Chad McQueen and Terry McQueen, reached the age specified in the trust, they inherited equal shares of these assets and rights. Upon Terry McQueen's death in 1998, her interest in Steve McQueen's assets and rights passed to her daughter, Molly Flattery, through The Terry McQueen Testamentary Trust. Neile Adams Toffel and Kenneth Gross, as the current co-trustees of the Trust, represent Molly Flattery's interest in the Trust and will do so until Molly Flattery reaches the age specified in the terms of the Trust.

     18.     Plaintiffs hold the rights set forth in California Civil Code § 3344.1, including the right to the use of Steve McQueen's name, voice, signature, photograph, and likeness on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods, or services. Plaintiffs also hold all related trademark rights in the Steve McQueen name and personality, including but not limited to the mark STEVE MCQUEEN. Chad McQueen and Terry McQueen registered their claims as the successors-in interest with the California Secretary of State, File Nos. 1989-009 and 1989-010 respectively (filed April 24, 1989), and the McQueen Heirs collectively hold full and complete ownership of the McQueen Personality Rights and McQueen Trademarks.

C.    **The Steve McQueen Licensing Program**

19.    Since Steve McQueen's death in 1980, his name and rights have been regularly licensed for use in advertising and on products. In the late 1980's, Chad McQueen and Terry McQueen entered into an agency representation agreement with The Roger Richman Agency. The agreement, in relevant part, appointed The Roger Richman Agency as the sole and exclusive licensing agent to affect licenses and other agreements for the use of Steve McQueen in advertising, commercials, endorsements, promotions, and packaging and sale of merchandise, without limitation.

20.    The Roger Richman Agency was acquired by Corbis Corporation ("Corbis") in 2005. Corbis represents the personality and trademark rights of many deceased celebrities and icons, including Albert Einstein, Andy Warhol, and the Wright brothers. As a consequence of the acquisition, Corbis is currently the sole and exclusive licensing agent for the McQueen Personality Rights and McQueen Trademarks, and Corbis supervises the licensing of all such rights on behalf of the McQueen Heirs.

21.    Since Steve McQueen's death in 1980, Plaintiffs and their legal predecessors have received frequent requests from potential licensees seeking to use Steve McQueen's name, voice, signature, photograph, likeness, and/or related trademarks in the promotion of various products. Through their exclusive licensing agents, Plaintiffs and their legal predecessors have closely supervised and controlled all licensing of Steve McQueen's intellectual property rights.

22.    Plaintiffs enjoy significant financial benefit from the licensing of the McQueen Personality Rights and McQueen Trademarks. For example, as a result of negotiated licensing agreements with the McQueen Heirs through their licensing agents, Steve McQueen's name, voice, signature, photograph, likeness and/or related trademarks have been used in nationwide

marketing campaigns for The Gap, Tag Heuer, Persol Sunglasses, Levi Straus & Co., and Absolut. Steve McQueen's name and image has generated millions of dollars in advertising revenue and has brought significant income to the McQueen Heirs.

23.     Corbis has licensed the McQueen Personality Rights and/or McQueen Trademarks to various clothing and apparel manufacturers. These licensing arrangements represent potentially hundreds of thousands of dollars of revenue to Plaintiffs. While Corbis is routinely approached and solicited by third parties seeking to license the McQueen Personality Rights and/or McQueen Trademarks, Corbis chooses to enter only a limited number of license or permission agreements granting third parties limited use of such rights. As such, the enduring value of Steve McQueen's name and image is largely attributable to careful management and control of the McQueen Personality Rights and McQueen Trademarks.

24.     Plaintiffs have used Steve McQueen's name consistently as a trademark in association with goods and/or services—including clothing, apparel, and accessories—in interstate commerce and international commerce since his death in 1980 and have acquired common law rights in the mark. For example, the name Steve McQueen, through authorized licensing agreements, has been used on products such as: Johnson Motors jackets and sweaters; Toys McCoys shirts and caps; Vintage 55 shirts; and Ford clothing and apparel.

25.     Continuously and without interruption since his death, Plaintiffs (individually or through their representatives) have expended a great deal of time, effort, and talent in controlling the works, goods, and services associated with the McQueen Personality Rights and/or McQueen Trademarks. The relevant consuming public has come to recognize works, products, and services bearing Steve McQueen's name, voice, signature, photograph, likeness, and/or related

trademarks as referring to Steve McQueen, and/or as otherwise being sponsored, approved, endorsed by, or affiliated with Steve McQueen.

26.     While Plaintiffs and their legal predecessors have used the mark STEVE MCQUEEN in connection with Steve McQueen for decades, Plaintiffs also filed an application on May 29, 2007 to register the mark STEVE MCQUEEN with the U.S. Patent and Trademark Office in International Class 025.

**D.     Defendants' Unlawful Conduct: "Steve McQueen Celebration" Products**

27.     In Spring 2007, Defendants, through their representative Michele Malenotti, contacted Corbis requesting a license to use Steve McQueen's name and publicity rights in association with Defendants' proposed product line of clothing and accessories. After a period of negotiations, which included a visit by Corbis to Belstaff's showroom in New York City, Corbis rejected Defendants' request for a license.

28.     In spite of Corbis' unequivocal refusal to license the McQueen Personality Rights and McQueen Trademarks to Defendants for use on their products, Plaintiffs have been informed and believe, and based thereon allege, that Defendants nonetheless issued jackets and T-shirts under a product line named "Steve McQueen Celebration," beginning as early as August 2007.

29.     On October 4, 2007, a Corbis representative purchased three jackets at Bloomingdale's department store in New York, New York. The jackets were purchased for $935.00, $1,095.00, and $1,195.00. All three jackets contained a large label sewn on the inside left flap containing a faint image of Steve McQueen on a motorcycle, containing the following language:

**Steve McQueen Celebration**
Steve McQueen was called the "King of Cool". He was a rebel, a
maverick and a great lover of freedom, fast cars and motorbikes. He
wore Belstaff clothing for sport and in private life. He was one of the
American team's official riders for the Six Days Trial held in East
Germany in 1964, and wore a fantastic racing jacket. The Steve
McQueen Celebration collection offers perfect reproductions, in a
limited and numbered series, of the clothing worn by Steve McQueen
during his adventurous and, regrettably, all-too-short life.

The same language and image appears on a tag attached to each jacket. The inside corner of

each jacket contains a metal plate reading "STEVE MC.QUEEN BLOUSON 1964." Sewn

inside the left flap of each jacket is a large label replicating the language and image on the tag

described above. The inside right flap of each jacket contains a tag labeled: "Official Steve

McQueen Licenced [sic] Product." Images of the jackets, tags, labels, and receipt are attached to

this Complaint as Exhibit A.

     30.    Defendants were and are not licensed or otherwise authorized by Plaintiffs to

manufacture, promote, advertise, distribute, display, offer for sale, or sell any of the intellectual

property of the McQueen Heirs in any form, including the McQueen Personality Rights and

McQueen Trademarks.

     31.    Corbis notified Defendants of the infringing products on or about October 30,

2007 and requested on behalf of the McQueen Heirs that Defendants: (1) stop using the Steve

McQueen name on all sales, (2) cease all promotions and sales of products bearing Steve

McQueen's name; (3) identify all retail outlets through which Belstaff have sold any such goods;

and (4) provide Corbis with an accounting of revenues from sales of products bearing Steve

McQueen's name, including the selling price of each item sold and an itemization of Corbis'

inventory.

     32.    Defendants, through counsel, responded to Corbis' letter on November 30, 2007,

stating, inter alia, that it "specifically denies it either ever made any representation as to being an

'official licensed' manufacturer of products arguably endorsed by Mr. McQueen's heirs."
Defendants also stated that the label "Official Steve McQueen Licenced [sic] Product" was
applied to "a limited number of sample products [Defendants] had prepared for review by
Corbis."

     33.    In January 2008, it came to Corbis' attention that Belstaff jackets and apparel
making identical use of the McQueen Personality Rights and McQueen Trademarks described
above were offered for sale on the auction website eBay, both nationally and abroad.  The
photographs presented on the eBay sales pages displayed jackets containing the same tags and
labels described above.  In addition, it came to Corbis' attention that Belstaff jackets and apparel
making identical use of the McQueen Personality Rights and McQueen Trademarks described
above were offered for sale at boutique retailer Fred Segal, in California.

     34.    Defendants engaged in the above-referenced activities with the full knowledge
that Plaintiffs do not consent to Defendants' uses of its intellectual property rights.  On
information and belief, such actions were taken in bad faith with full knowledge of Plaintiffs'
ownership of and Plaintiffs' exclusive rights to the McQueen Personality Rights and McQueen
Trademarks, with the intent to deceive and mislead Corbis by falsely representing that
Defendants uses were applied only to "a limited number of sample products [Defendants] had
prepared for review by Corbis," and with the intent to deceive and mislead the public into
believing that Defendants' products are sponsored, licensed, or authorized by or affiliated,
connected, or otherwise associated with Steve McQueen.

     35.    Belstaff's use of the name "Steve McQueen Celebration," its use of Steve
McQueen's name, image, signature, and likeness, in its tags and labels on its products, and its
statement that its products are "Official Steve McQueen Licenced [sic] Product[s]" cause

confusion to the public and injury to the true owners of the McQueen Personality Rights and McQueen Trademarks.

36.    Though Defendants have represented that they have ceased using "Steve McQueen" in association with its products, Belstaff's assertion in its November 30, 2007 letter that it does not recognize Plaintiffs' "rights in Steve Mc Queen's right of publicity or personality, or any rights in a 'Steve McQueen' trademark" creates a real and impending likelihood that Defendants could resume use of the name "Steve McQueen" on or in connection with their products, thereby injuring Plaintiffs' publicity, privacy, and trademark rights.

**E.    Defendants' Unlawful Conduct: "SMQ Celebration" Products**

37.    In January 2008, while Corbis was investigating the extent of Defendants' further involvement with the McQueen Personality Rights and McQueen Trademarks, Corbis discovered that Belstaff's internet website, located at http://www.belstaff.com, was advertising several products of men's clothing in its "Man Collection Fall/Winter 2007/2008" product line under the name "SMQ Celebration."

38.    On each webpage where a product in the "SMQ Celebration" product line was displayed, large text of the letters "SMQ" appeared at the top of the page.  The individual pages contained the following items, with the accompanying text, where relevant:

      a.     SMQ REPLICA RACING JKT:  The jacket SMQ originally wore for Enduro motorcycle races. . . .

      b.     SMQ REPLICA JACKET

      c.     SMQ SHEARL1NG JACKET: Faithful replica of a jacket worn by SMQ..

      d.     SMQ BOMBER:  Bomber jacket originally worn by SMQ, made of very strong and protective genuine 1 970s nylon.

      e.     SMQ BLOUSON:  A faithful, limited-number replica of the blouson originally worn by SMQ.

f.   SMQ COAT:  Faithful replica of the caban jacket originally worn by SMQ on cold winter days.

g.   SMQ SWEATER (Front):  Perfect replica of a sweater originally worn by SMQ.

h.   SMQ TURTLENECK

i.   SMQ REPLICA OVERTROUSERS

j.   SMQ JEANS

k.   SMQ HIGH REINF. [leather boots and shoes]

39.    Belstaff was and is not licensed or otherwise authorized by Plaintiffs to manufacture, promote, advertise, distribute, display, offer for sale, or sell any of the intellectual property of the Trust in any form, including the McQueen Personality Rights and McQueen Trademarks.  Belstaff's use of the name "SMQ Celebration," its naming of individual products with the introductory designation "SMQ," and its reference to "SMQ" in the textual description of its products, cause confusion to the public and injury to the true owners of the McQueen Personality Rights and McQueen Trademarks.

40.    Defendants engaged in the above-referenced activities without permission or authorization from Plaintiffs.  Further, Defendants engaged in the above-referenced activities with the full knowledge that Plaintiffs do not consent to Defendants' uses of its intellectual property rights.  On information and belief, such actions were taken in bad faith with full knowledge of Plaintiffs' ownership of and Plaintiffs' exclusive rights to the McQueen Personality Rights and McQueen Trademarks, with the intent to deceive and mislead the public into believing that Defendants' products are sponsored, licensed, or authorized by or affiliated, connected, or otherwise associated with Steve McQueen.

41.    Corbis notified Defendants of the infringing SMQ product line on or about January 11, 2008 by telephone.  Defendants responded in a letter, dated January 16, 2008, stating

that they do not recognize that Plaintiffs have "any rights in Steve McQueen's right of publicity or personality, or any rights in a "Steve McQueen trademark." Additionally, Defendants stated that "The letters 'SMQ' are not the initials of the deceased actor Steve McQueen, whose birth name was Terence Steven McQueen and accordingly it is not clear how our client's use of 'SMQ' is false, confusing or misleading since your clients do not have rights in either the 'Steve McQueen' or 'SMQ' trademarks and have not used those trademarks in commerce."

42.    Plaintiffs responded to Defendants' letter on or about January 17, 2008, disputing Defendants' contentions.

43.    Defendants responded to Plaintiffs' letter on or about January 24, 2008, reiterating that it "does not recognize that [Plaintiffs] have any rights in Steve McQueen's rights of publicity, personality or privacy under the laws of the fifty states, or any rights in a 'Steve McQueen' or 'SMQ' trademark."

44.    Defendants' use of the McQueen Personality Rights and McQueen Trademarks is likely to cause consumer confusion or mistake or deceive consumers into thinking that Defendants' products are authorized by, or affiliated, connected, or otherwise associated with Steve McQueen. Defendants intentionally, willfully, and in bad faith created and fostered this misimpression.

45.    Though Defendants have represented that they have ceased using "Steve McQueen" or "SMQ" in association with their products, Belstaff's assertion that it "does not recognize that [Plaintiffs] have any rights in Steve McQueen's rights of publicity, personality or privacy under the laws of the fifty states, or any rights in a 'Steve McQueen' or 'SMQ' trademark" creates a real and impending likelihood that Defendants could resume use of the

name "Steve McQueen" or "SMQ" on or in connection with their products, thereby injuring Plaintiffs' publicity, privacy, and trademark rights.

46.    Defendants' activities are likely to diminish and blur and/or tarnish the meaning of the McQueen Trademarks, thereby diluting the distinctive qualities of the marks.

47.    Defendants' activities have caused and will continue to cause Plaintiffs great and irreparable harm and damage. Unless permanently restrained and enjoined by this Court, Defendants will persist in their unlawful activities, thereby causing further damage and irreparable harm to Plaintiffs and to the public interest.

48.    On March 14, 2008, Defendants filed a Notice of Opposition with the U.S. Patent and Trademark Office to dispute Plaintiffs' application to register the mark STEVE MCQUEEN. Defendants' opposition, inter alia, states that Defendants have "adopted the 'STEVE MCQUEEN' mark," that Defendants' use is "confusingly similar" to Plaintiffs' use, that the mark "enjoys a high level of distinctiveness," and that Defendants' "use of the mark has been continuous, exclusive, public and substantial." A copy of Defendants' Notice of Opposition is attached to this Complaint as Exhibit B.

49.    Plaintiffs have no adequate remedy at law.

## CLAIMS FOR RELIEF

### COUNT I

### Federal Unfair Competition—15 U.S.C. 1125(a)

50.    Plaintiffs hereby reallege and incorporate by reference the allegations of paragraphs 1 through 49 of this Complaint.

51.    The aforesaid acts of Defendants constitute use in commerce of words, terms, names, symbols, and devices, and combinations thereof; false designations of origin; false and misleading descriptions of fact; and false and misleading representations of fact that is likely to

cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiffs, or as to the origin, sponsorship, or approval of Defendants' services, goods, or other commercial activities with Plaintiffs' trademark rights in Steve McQueen.

52.    The aforesaid acts of Defendants constitute use in commerce of words, terms, names, symbols, and devices, and combinations thereof; false designations of origin; false and misleading descriptions of fact; and false and misleading representations of fact in commercial advertising, or promotion that misrepresents the nature, characteristics, or qualities of Defendants' services, goods, or other commercial activities.

53.    The aforesaid acts of Defendants constitute false designation of origin and false and misleading descriptions and representations in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

54.    The aforesaid acts of Defendants were willfully intended to trade on the reputation and goodwill associated with the trademark rights in Steve McQueen's name.

55.    The aforesaid acts of Defendants have caused damages to Plaintiffs in an amount to be determined at trial.

56.    The aforesaid acts of Defendants have caused, and are causing, great and irreparable harm to Plaintiffs, and unless permanently restrained by this Court, said irreparable injury will continue.

## COUNT II

### False Endorsement and False Designation of Origin—15 U.S.C. 1125(a)

57.    Plaintiffs hereby reallege and incorporate by reference the allegations of paragraphs 1 through 56 of this Complaint.

58.    Defendants' unauthorized use, and any continuing use, in interstate commerce of the valid and enforceable name and mark "Steve McQueen," and its identifiable abbreviation "SMQ," in connection with their sales of goods constitutes a violation of 15. U.S.C. § 1125(a) in that it creates a false designation of origin as to the goods advertised, distributed, offered for sale and sold by Defendants, which is likely to confuse, mislead, or deceive the consuming public and trade by creating the false impression that Defendants' goods advertised, distributed, offered for sale and sold by Defendants have been manufactured, approved, sponsored, endorsed, or are in some way affiliated with Steve McQueen and/or Plaintiffs.

59.    Defendants' use, and any continuing use, in interstate commerce of the name and mark "Steve McQueen," and its identifiable abbreviation "SMQ," in connection with their sales of goods also constitutes a false or misleading description or representation in interstate commerce, in violation of 15 U.S.C. § 1125(a).

60.    By utilizing Plaintiffs' trademarks rights to promote their goods and services, Defendants have willfully and deliberately engaged in a scheme and course of conduct to confuse the public as to Plaintiffs' sponsorship or approval of Defendants' goods.  Defendants have been unjustly enriched by their misappropriation of Plaintiffs' intellectual property.

61.    Defendants' acts constitute a false representation or designation of origin tending falsely to represent or designate Defendants' goods as authorized by or emanating from Plaintiffs.  It is the intent, purpose, and natural effect of Defendants' conduct that consumers be confused into thinking that Defendants' goods emanate from or are sponsored by Plaintiffs.  The deliberate use of Plaintiffs' and trademarks can only be intended to cause the public to believe that Defendants' goods are manufactured by, or under the authority of, Plaintiffs and to cause the

public to associate Defendants' goods with Plaintiffs. Defendants' acts thus violate 15 U.S.C. § 1125(a).

62.    The aforesaid acts of Defendants have caused, and are causing, great and irreparable harm to Plaintiffs, and unless permanently restrained by this Court, said irreparable injury will continue.

## COUNT III

### False Advertising—15 U.S.C. 1125(a)

63.    Plaintiffs hereby reallege and incorporate by reference the allegations of paragraphs 1 through 62 of this Complaint.

64.    Defendants have used false or misleading descriptions or representations as to the goods advertised, distributed, offered for sale and sold by Defendants, within the meaning of 15 U.S.C. § 1125(a).

65.    Defendants' false statements are material and, upon information and belief, have caused actual deception and/or have a tendency to deceive a substantial portion of the intended audience.

66.    Defendants' misrepresentations have injured Plaintiffs in its business and have damaged Plaintiffs' reputation.

67.    Upon information and belief, Defendants have made these false statements in bad faith and with knowledge of their falsity.

68.    The aforesaid acts of Defendants have caused, and are causing, great and irreparable harm to Plaintiffs, and unless permanently restrained by this Court, said irreparable injury will continue.

## COUNT IV

### Violation of Rights of Publicity—California Civil Code 3344.1

69.     Plaintiffs hereby reallege and incorporate by reference the allegations of paragraphs 1 through 68 of this Complaint.

70.     Plaintiffs are the holders and owners of one hundred percent (100%) of the rights in Steve McQueen's name, voice, signature, photograph, and likeness, as well as all related trademarks.

71.     Defendants violated Plaintiffs' exclusive right to make use of the name and personality of Steve McQueen by knowingly and intentionally using Steve McQueen's name, photograph, signature, and likeness in connection with advertising, promoting, selling and/or soliciting products, without Plaintiffs' prior consent, for commercial purposes, gain and profit, directly in connection with manufacturing, offering for sale and selling, advertising, marketing, and distributing its "Steve McQueen Celebration" and "SMQ Celebration" products.

72.     The use of the names "Steve McQueen" and "SMQ," as well as the image, signature, and likeness of Steve McQueen, by Defendants in connection with manufacturing, offering for sale and selling, advertising, marketing, and distributing the "Steve McQueen Celebration," and "SMQ Celebration," products including representations that Defendants products are "Official Steve McQueen Licenced [sic] Product[s]," has directly resulted in substantial and ongoing harm and injury to Plaintiffs, in that, among other things, the Steve McQueen name is being falsely associated with Defendants' products.

73.     As a direct and proximate result of Defendants' conduct, pursuant to California Civil Code § 3344.1, Plaintiffs are entitled to equal to the greater of (i) seven hundred fifty dollars ($750) per each unauthorized use; or (ii) the actual damages suffered by her as a result of

the unauthorized uses, and any profits from the unauthorized uses that are attributable to the use and are not taken into account in computing the actual damages.

74.     Because Defendants engaged in knowing, willful, and conscious disregard for the rights of Plaintiffs, Defendants are guilty of oppression, fraud, and malice, entitling Plaintiffs to an award of punitive damages under California Civil Code § 3344.

75.     Pursuant to the mandatory attorneys' fees provision of California Civil Code § 3344, Plaintiffs are also entitled to recover its attorneys' fees and costs.

76.     Because Steve McQueen was domiciled in and was a resident of California at the time of his death, and because the primary situs of the injury to the McQueen Personality Rights is in California, California Civil Code § 3344.1 applies to this claim.

77.     Unless and until enjoined and restrained by order of this Court, Plaintiffs will continue to suffer great and irreparable injury in that the McQueen Personality Rights are being falsely associated with Defendants' products. Plaintiffs have no adequate remedy at law for such injury.

## COUNT V

### California Statutory Unfair Competition—California Civil Code 17200 et seq.

78.     Plaintiffs hereby reallege and incorporate by reference the allegations of paragraphs 1 through 75 of this Complaint.

79.     By reason of the Defendants' conduct alleged herein, Defendants have been, and are, engaged in unlawful, unfair, or fraudulent business practices in violation of § 17200 et seq. of the California Business and Professions Code and acts of unfair competition in violation of the common law of the State of California.

80.    The aforesaid acts of Defendants have caused, and are causing, great and irreparable harm to Plaintiffs, and unless permanently restrained by this Court, said irreparable injury will continue.

## COUNT VI

### Deceptive Acts and Practices Under New York Law—N.Y. Gen. Bus. 349(h)

81.    Plaintiffs hereby reallege and incorporate by reference the allegations of paragraphs 1 through 80 of this Complaint.

82.    The aforesaid acts of Defendants constitute deceptive acts or practices in the conduct of business, trade, or commerce, or in the furnishing of any service in New York State in violation of Section 349(h) of the New York General Business Law.

83.    The aforesaid acts of Defendants have caused, and are causing, great and irreparable harm to Plaintiffs, and unless permanently restrained by this Court, said irreparable injury will continue.

## COUNT VII

### Injury to Business Reputation and Dilution Under New York Law—N.Y. Gen. Bus. 360-1

84.    Plaintiffs hereby reallege and incorporate by reference the allegations of paragraphs 1 through 83 of this Complaint.

85.    The aforesaid acts of Defendants constitute intended use beginning after the McQueen Trademarks had become famous and will dilute the distinctive quality of the McQueen Trademarks.

86.    The aforesaid acts of Defendants are likely to injure the business reputation of Plaintiffs and to dilute the distinctive quality of Plaintiffs' trademarks in violation of Section 360-1 of the New York General Business Law.

87.     The aforesaid acts of Defendants have caused, and are causing, great and irreparable harm to Plaintiffs, and unless permanently restrained by this Court, said irreparable injury will continue.

## COUNT VIII

### False Advertising—N.Y. Gen. Bus. 350-e(3)

88.     Plaintiffs hereby reallege and incorporate by reference the allegations of paragraphs 1 through 87 of this Complaint.

89.     Defendants misleadingly advertised services, in that Defendants made statements, used words, designs, devices, sounds, or combinations thereof that failed to reveal facts material in the light of such representations with respect to the subject service, or under such conditions as are customary or usual.

90.     The aforesaid acts of Defendants constitute false advertising in the conduct of business, trade, or commerce, or in the furnishing of any service in New York State in violation of Section 350-e(3) of the New York General Business Law.

91.     The aforesaid acts of Defendants have caused, and are causing, great and irreparable harm to Plaintiffs, and unless permanently restrained by this Court, said irreparable injury will continue.

## COUNT IX

### Common Law Trademark Infringement

92.     Plaintiffs hereby reallege and incorporate by reference the allegations of paragraphs 1 through 91 of this Complaint.

93.     The aforesaid acts of Defendants constitute use that is likely to cause confusion as to the source of Defendants' goods and/or services.

94.    The aforesaid acts of Defendants constitute trademark infringement in violation of common law.

95.    The aforesaid acts of Defendants have caused, and are causing, great monetary harm to Plaintiffs.  In addition, and independently, the aforesaid acts of Defendants have caused, and are causing, great and irreparable harm to Plaintiffs, and unless permanently restrained by this Court, said irreparable injury will continue.

96.    Because Defendants engaged in knowing, willful, and conscious disregard for the rights of Plaintiffs, Defendants are guilty of oppression, fraud, and malice, entitling Plaintiffs to an award of punitive damages.

## COUNT X

### Common Law Unfair Competition

97.    Plaintiffs hereby reallege and incorporate by reference the allegations of paragraphs 1 through 96 of this Complaint.

98.    The aforesaid acts of Defendants constitute use that is likely to cause confusion as to the source of Defendants' goods and/or services.

99.    The aforesaid acts of Defendants constitute unfair competition in violation of common law.

100.    The aforesaid acts of Defendants have caused, and are causing, great monetary harm to Plaintiffs.  In addition, and independently, the aforesaid acts of Defendants have caused, and are causing, great and irreparable harm to Plaintiffs, and unless permanently restrained by this Court, said irreparable injury will continue.

101.    Because Defendants engaged in knowing, willful, and conscious disregard for the rights of Plaintiffs, Defendants are guilty of oppression, fraud, and malice, entitling Plaintiffs to an award of punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment in favor of Plaintiffs and against each of the Defendants as follows:

a.  That, pursuant to 15 U.S.C. § 1125; California Code § 3344.1 and § 17200 et seq; New York Code § 349(h), 350-e(3), 360-1; and common law, Defendants, as well as all persons acting under the direction, control, permission, or authority of any or all Defendants, and all persons acting in concert therewith, be enjoined during the pendency of this action, and permanently enjoined thereafter, from using, copying, reproducing, or imitating Plaintiffs' name, voice, signature, photograph, likeness, or marks, or any confusingly similar or colorable imitation thereof, including "Steve McQueen" and "SMQ," in any manner, and that all infringing materials, electronic or otherwise, in possession of Defendants be delivered up and destroyed pursuant to 15 U.S.C. § 1125;

b.  That, pursuant to California Civil Code § 3344.1 and the common law, Defendants, as well as all persons acting under the direction, control, permission, or authority of any or all Defendants, and all persons acting in concert therewith, be enjoined during the pendency of this action, and permanently enjoined thereafter, from using the name, voice, signature, photograph, and likeness of Steve McQueen, including "SMQ";

c.  That Defendants be directed to file with this Court and to serve upon Plaintiffs within thirty (30) days after service upon Defendants of this Court's injunction issued in this action, a written report by Defendants under oath setting forth in detail the manner in which Defendants has complied with this injunction.

d.  That Plaintiffs recover three times its damages and Defendants' profits, as well as reasonable attorneys' fees, and the costs of this action;

e.  That Plaintiffs be awarded punitive damages in an amount sufficient to punish Defendants and deter others, pursuant, inter alia, to California Civil Code § 3344;

f.  That this Court direct the U.S. Patent and Trademark Office to order a dismissal of Defendants' opposition to Plaintiffs' pending application, serial number 77/192,489, for a federal trademark registration in STEVE MCQUEEN, and direct the U.S. Patent and Trademark Office to issue a trademark registration in Plaintiffs' favor; and

g.  That Plaintiffs have such other and further relief as the Court deems just and proper.

DATED:        New York, New York
              March 25, 2008

                              QUINN EMANUEL URQUHART OLIVER &
                              HEDGES, LLP

                              By:    _____
                                     Robert L. Raskopf (RR-5022)
                                     Todd Anten (TA-9989)

                              51 Madison Avenue, 22nd Floor
                              New York, New York 10010
                              Tel: (212) 849-7000
                              Fax: (212) 849-7100

                              ATTORNEYS FOR PLAINTIFFS
                                CHADWICK MCQUEEN AND THE TERRY
                              MCQUEEN TESTAMENTARY TRUST

# EXHIBIT A



Belstaff EST. 1924

## Steve McQueen
## Celebration

Steve McQueen was called the "King of Cool".
He was a rebel, a maverick and a great lover of
freedom, fast cars and motorbikes.
He wore Belstaff clothing for sport and in private life.
He was one of the American team's official riders
for the Six Days Trial held in East Germany in 1964,
and wore a fantastic racing jacket.
The Steve McQueen Celebration collection offers
perfect reproductions, in a limited and numbered series,
of the clothing worn by Steve McQueen during his
adventurous and, regrettably, all-too-short life.

Belstaff: More than 80 Years experience in protection



# Steve McQueen Celebration

Steve McQueen was called the "King of Cool".
He was a rebel, a maverick and a precursor of
freedom, fast cars and motorbikes.

He wore Belstaff clothing for sport and in private life.
He was one of the American team's official riders
for the Six Days Trial held in East Germany in 1964
and wore a fantastic racing jacket.

The Steve McQueen Celebration collection offers
perfect reproductions, in a limited and numbered series,
of the clothing worn by Steve McQueen during his
adventurous and, regrettably, all-too-short life.

Belstaff. We are 80 years experience of protection



Official Steve McQueen Licensed Product





LIKE NO OTHER STORE IN THE WORLD

# TERMINAL 180



THANK YOU FOR SHOPPING AT
BLOOMINGDALE'S, NEW YORK

TERMINAL 180 CUSTOMER COPY    PURCHASE
S001 ASSC 640660 TR8010 10/04/07  249P

| MENS OUTERWR | QTY 1* | 935.00 |
| 478001558477 | | |
| MENS OUTERWR | QTY 1* | 1095.00 |
| 478001556484 | | |
| MENS OUTERWR | QTY 1* | 1195.00 |
| 478001558460 | | |

SUBTOTAL                    3225.00
   43 NY 4.375% TAX          141.09

TOTAL AMOUNT DUE STORE       3366.09

 APPROVE-071323
VISA              XXXXXXXXXXXX6081 M
   VISA                     3366.09



# KEEP THIS RECEIPT

# FOR RETURN/EXCHANGE

See Reverse Side

Go to
www.bloomingdales.com/sweepstakes
For a monthly chance to win a $500
Bloomingdale's Gift card.

# EXHIBIT B

*Trademark Trial and Appeal Board Electronic Filing System. http://estta.uspto.gov*

ESTTA Tracking number: **ESTTA197981**

Filing date: **03/12/2008**

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
### BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

## Notice of Opposition

Notice is hereby given that the following party opposes registration of the indicated application.

## Opposer Information

| | |
|---|---|
| Name | Clothing Company Spa |
| Granted to Date of previous extension | 03/12/2008 |
| Address | via Bonisiolo 15<br>Zerman di Mogliano Veneto (TV), 31020<br>ITALY |

| | |
|---|---|
| Attorney information | John S. Egbert<br>EGBERT LAW OFFICES, PLLC<br>412 Main St., 7th Floor<br>Houston, TX 77002<br>UNITED STATES<br>mail@egbertlawoffices.com Phone:713-224-8080 |

## Applicant Information

| Application No | 77192489 | Publication date | 11/13/2007 |
|---|---|---|---|
| Opposition Filing Date | 03/12/2008 | Opposition Period Ends | 03/12/2008 |
| Applicants | The Trustee of the Terry McQueen Testamentary Trust, a California trust, the trustee comprising Neile Adams Toffel, a citizen of the United States<br>c/o Corbis Corporation 710 2nd Street, Suite 200<br>Seattle, WA 98104<br>UNITED STATES<br><br>McQueen, Chadwick<br>c/o Corbis Corporation 710 2nd Street, Suite 200<br>Seattle, WA 98104<br>UNITED STATES | | |

## Goods/Services Affected by Opposition

| |
|---|
| Class 025.<br>All goods and services in the class are opposed, namely: Footwear; athletic footwear; baseball caps; bathing suits; bathing trunks; beach coverups; belts; briefs; cap visors; caps; caps with visors; coats; headwear; jackets; knit shirts; knitted caps; pants; polo shirts; shirts; shoes; short sets; sleeping garments; socks; sport coats; sport shirts; sports jackets; sports shirts; sweat pants; sweat shirts; sweaters; swim wear; T-shirts; ties; tops; undergarments; wraps |

## Grounds for Opposition

| Priority and likelihood of confusion | Trademark Act section 2(d) |
|---|---|

## Mark Cited by Opposer as Basis for Opposition

| U.S. Application/ Registration No. | NONE | Application Date | NONE |
|---|---|---|---|
| Registration Date | NONE | | |
| Word Mark | STEVE MCQUEEN | | |
| Goods/Services | Clothing goods in international class 025. | | |

| Attachments | 1719-149 noticeofopposition.STEVE MCQUEEN.pdf ( 5 pages )(40975 bytes ) |
|---|---|

## Certificate of Service

The undersigned hereby certifies that a copy of this paper has been served upon all parties, at their address record by First Class Mail on this date.

| Signature | /1719-149/ |
|---|---|
| Name | John S. Egbert |
| Date | 03/12/2008 |

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

In the Matter of Application Serial No. 77/192,489
Published in the Official Gazette on November 13, 2007

| | | |
|---|---|---|
| CLOTHING COMPANY Spa, | § | |
| | § | |
| Opposer, | § | |
| | § | |
| v. | § | Opposition No. _____ |
| | § | |
| THE TRUSTEE OF THE TERRY MCQUEEN | § | |
| TESTAMENTARY TRUST, A | § | |
| CALIFORNIA TRUST, THE TRUSTEE | § | |
| COMPRISING NEILE ADAMS TOFFEL, A | § | |
| CITIZEN OF THE UNITED STATES; | § | |
| MCQUEEN, CHADWICK, | § | |
| | § | |
| Applicants. | § | |

## NOTICE OF OPPOSITION

The Opposer, CLOTHING COMPANY Spa ("Opposer"), a corporation organized under the laws of Italy, located at via Bonisiolo 15, Zerman di Mogliano Veneto (TV), 31020, ITALY, believes that it will be damaged by registration of the mark shown in the above-identified application, and hereby opposes the same.

As grounds for opposition, it is alleged that:

1.     The Applicants, THE TRUSTEE OF THE TERRY MCQUEEN TESTAMENTARY TRUST, A CALIFORNIA TRUST, THE TRUSTEE COMPRISING NEILE ADAMS TOFFEL, A CITIZEN OF THE UNITED STATES, a trust of the State of California with an address of Corbis Corporation 710 2nd Street, Suite 200, Seattle, WASHINGTON 98104 and MCQUEEN, CHADWICK, an individiual of the United States with an address of Corbis Corporation 710 2nd Street, Suite 200, Seattle, WASHINGTON 98104 (collectively "Applicants"), have filed an intent-

to-use application to register the "STEVE MCQUEEN" mark for use in connection with "footwear; athletic footwear; baseball caps; bathing suits; bathing trunks; beach coverups; belts; briefs; cap visors; caps; caps with visors; coats; headwear; jackets; knit shirts; knitted caps; pants; polo shirts; shirts; shoes; short sets; sleeping garments; socks; sport coats; sport shirts; sports jackets; sports shirts; sweat pants; sweat shirts; sweaters; swim wear; T-shirts; ties; tops; undergarments; wraps" in International Class 025. Said application was filed on May 29, 2007, was assigned U.S. Application No. 77/192,489 and was published for Opposition in the Official Gazette on November 13, 2007.

2.    Commencing long prior to Applicants' filing date, Opposer has engaged, and is now engaged in the manufacture, distribution, sale, advertising and promotion in interstate commerce of various clothing goods in international class 025 in the United States.

3.    In connection therewith, Opposer has adopted the "STEVE MCQUEEN" mark and has used the mark for goods in International Class 025. Opposer's use of the mark has been continuous, exclusive, public and substantial since the date of first use in commerce that commenced prior to the filing date of Applicants' intent-to-use application, U.S. Application No. 77/192,489, filed on May 29, 2007.

4.    Applicants' "STEVE MCQUEEN" mark would be confusingly similar because:

    a.    the mark is identical in appearance to Opposer's mark;
    b.    the mark is identical in sound to Opposer's mark;
    c.    the mark is identical in connotation to Opposer's mark;
    d.    the goods of Opposer and the goods of the Applicants are closely related and/or marketed through the same or overlapping channels of trade and/or to the same classes of consumers;
    e.    Opposer's "STEVE MCQUEEN" mark enjoys a high level of distinctiveness.

5.    Since Opposer's initial use of its "STEVE MCQUEEN" mark, Opposer has made a substantial investment in advertising and promoting its goods under its trademark. Opposer has extensively used, advertised, promoted and offered Opposer's goods bearing Opposer's "STEVE MCQUEEN" mark to the public through various channels of trade in commerce, with the result that Opposer's customers and the public in general have come to know and recognize Opposer's Mark and associate the same with Opposer and/or goods sold by Opposer. As a result of such extensive use and advertisement, Opposer's customers and the public in general will in the future know and recognize Opposer's "STEVE MCQUEEN" mark and associate the same with Opposer and/or goods sold by Opposer.

6.    Opposer's "STEVE MCQUEEN" mark, constitutes the lawful, valued, subsisting, and exclusive property of the Opposer. As a result of the high quality of Opposer's goods, sold and to be sold under the marks, and the extensive sales and advertising throughout the United States, the aforementioned mark has become an intrinsic and essential part of the valuable goodwill and property of Opposer, and are recognizable and associated by the public as a symbol identifying and distinguishing Opposer's products as those of exceptional quality.

7.    Applicants' "STEVE MCQUEEN" mark, U.S. Application No. 77/192,489, so resembles Opposer's "STEVE MCQUEEN" mark, as to be likely to cause confusion or mistake, to suggest a connection, or to deceive purchasers into believing that Applicants' goods originate with the Opposer and/or are endorsed or sponsored by the Opposer, and/or that Applicants and/or their goods are otherwise affiliated with the Opposer and its goods.

8.    Use of Applicants' mark will inexorably have an adverse effect upon the value of Opposer's marks. If this Opposition is not sustained, any defect, objection to, or fault found with

-3-

Applicants' goods provided under the "STEVE MCQUEEN" mark would necessarily reflect on and seriously injure the valuable goodwill and reputation that Opposer has established, and will establish, for its goods.

9.    Based on the foregoing arguments, registration of the mark "STEVE MCQUEEN" for use in connection with "footwear; athletic footwear; baseball caps; bathing suits; bathing trunks; beach coverups; belts; briefs; cap visors; caps; caps with visors; coats; headwear; jackets; knit shirts; knitted caps; pants; polo shirts; shirts; shoes; short sets; sleeping garments; socks; sport coats; sport shirts; sports jackets; sports shirts; sweat pants; sweat shirts; sweaters; swim wear; T-shirts; ties; tops; undergarments; wraps" in International Class 025, as found in U.S. Application No. 77/192,489, filed on May 29, 2007, and published for Opposition in the Official Gazette on November 13, 2007, will cause injury and damage to the Opposer.

WHEREFORE, Opposer respectfully requests that the Trademark Trial and Appeal Board find and order that registration by Applicants of the mark "STEVE MCQUEEN" in class 025 be denied as damaging to the Opposer and this opposition be sustained.

Opposer hereby submits the requisite filing fee of $300.00 for opposing Applicants' registration in international class 025.

Respectfully submitted,

__March 12, 2008_____          ____/1719-149/_____
Date                                John S. Egbert
                                    Reg. No. 30,627
                                    L. Jeremy Craft
                                    Attorneys for Opposer

                                    Egbert Law Offices, PLLC
                                    412 Main St., 7th Floor
                                    Houston, Texas 77002
                                    (713)224-8080
                                    (713)223-4873 (Fax)

## CERTIFICATE OF SERVICE

This is to certify that on this 12th day of March 2008, a true and correct copy of the foregoing

document is being sent by regular mail to the following attorney of record for the Applicants:

    SALLY M. ABEL, ESQ.
    FENWICK & WEST LLP
    801 CALIFORNIA STREET SILICON VALLEY CENTER
    MOUNTAIN VIEW, CA 94041

    ATTORNEY FOR APPLICANTS


                                    ____/1719-149/_____
                                    John S. Egbert




JSE:ksw
Our File: 1719-149